UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Northeast Bank,

        Plaintiff,

v.                                                                               Civil No. 11-3233 (JNE/JJG)
                                                                                                          ORDER
The Hanover Insurance Group,

        Defendant,

and

Wells Fargo Bank, N.A.,

        Defendant and Third-Party Plaintiff,

v.

Percy Pooniwala, Dinaz Pooniwala, Shreekanth
Maripally, and Ashok Shetty,

        Third-Party Defendants.

---

Mark E. Duea, Geck, Duea & Olson, PLLC, appeared for Northeast Bank.

Amy L. Schwartz, Lapp, Libra, Thomson, Stoebner & Pusch, Chartered, appeared for Wells Fargo Bank, N.A.

---

        In response to a claim on an insurance policy, the Hanover Insurance Group (Hanover) issued two checks made payable to Grand Rios Investments, LLC (Grand Rios), Northeast Bank, and Alex N. Sill Company, the insured, the loss payee, and the public adjuster, respectively.[1] Without Northeast Bank's endorsement, knowledge, or consent, Wells Fargo Bank, N.A., paid the full amount of the checks to Grand Rios. After Wells Fargo Bank had refused its payment

---

[1] The policy and the checks were issued by one of Hanover's companies, Massachusetts Bay Insurance Co. No material distinction between Hanover and Massachusetts Bay Insurance appears for present purposes. The Court refers to Hanover alone.

1

demands, Northeast Bank brought this action. In its Second Amended Complaint, Northeast Bank asserted a claim against Wells Fargo Bank for conversion under the Uniform Commercial Code, Minn. Stat. § 336.3-420 (2012).[2] The case is before the Court on Northeast Bank's and Wells Fargo Bank's motions for summary judgment. For the reasons set forth below, the Court grants Northeast Bank's motion and denies Wells Fargo Bank's motion.

## I.   BACKGROUND

Grand Rios purchased an insurance policy from Hanover. The policy covered real property located in Brooklyn Park, Minnesota. Northeast Bank, as mortgagee, was named as a loss payee in the policy. After a loss at the property, Grand Rios submitted a claim to Hanover, which responded by issuing two checks. The first, a check for $100,000, was dated February 15, 2011, and made payable to "Alex N. Sill Company and Grand Rios Investment LLC and Northeast Bank." Without Northeast Bank's endorsement, knowledge, or consent, the check was tendered at Wells Fargo Bank for payment to Grand Rios. Wells Fargo Bank paid $100,000 to Grand Rios. Having received no benefit from the check, Northeast Bank demanded $100,000 from Wells Fargo Bank. The demand was refused.

The second check was made out in the amount of $250,000. It was dated March 16, 2011, and made payable to "Grand Rios Investment LLC and Northeast Bank and Alex N. Sill Company." Again, without Northeast Bank's endorsement (forged or otherwise), knowledge, or consent, the check was tendered at Wells Fargo Bank for payment to Grand Rios. And again, Wells Fargo Bank paid the full amount of the check, $250,000, to Grand Rios. Having received

---

[2]   Northeast Bank also asserted claims against Hanover for breach of contract as a third-party beneficiary and for enforcement of a lost, destroyed, or stolen instrument under the Uniform Commercial Code, Minn. Stat.§§ 336.3-309 to -310 (2012). The Court dismissed the claims against Hanover in July 2012.

2

no benefit from the check, Northeast Bank demanded $250,000 from Wells Fargo Bank. The demand was refused.

Grand Rios failed to make mortgage payments to Northeast Bank in February, March, and April 2011. In April 2011, Northeast Bank sent a notice of default to Grand Rios. Subsequent negotiations yielded a Settlement and Release Agreement dated June 16, 2011. Northeast Bank and Grand Rios, as well as individuals who had guaranteed Grand Rios's payment to Northeast, were parties to the agreement. It contemplated a voluntary mortgage foreclosure, the appointment of a receiver, the assignment of insurance to Northeast Bank, and a $50,000 payment by the individuals to Northeast Bank. The payment was made by the end of June 2011. The agreement also included a release of the individuals from claims related to the property, but the release excluded "any claims against any third parties, including any claims related to insurance, deposited items and proceeds of insurance or collateral."

On June 16, 2011, Grand Rios and Northeast Bank also executed an Assignment of Insurance. Grand Rios assigned "all claims, proceeds, privileges and other rights and interest in and to" its insurance policies to Northeast Bank.

The next day, the Minnesota District Court, Fourth Judicial District, appointed a receiver for the property pursuant to a stipulation that Grand Rios and Northeast Bank had executed. The receiver maintained an escrow account into which insurance proceeds were deposited.

On June 23, 2011, Grand Rios and Northeast Bank executed a Voluntary Mortgage Foreclosure Agreement. The mortgage foreclosure sale took place on August 1, 2011. Northeast Bank bought the property by bidding approximately $4.6 million of Grand Rios's outstanding indebtedness of almost $5 million. No redemption took place during the two-month redemption

period.  Upon the redemption period's expiration, Northeast Bank took ownership of approximately $700,000 in the escrow account.

In September 2012, Hanover paid approximately $450,000 to Northeast Bank on a claim for roof damage to the property.  Hanover also paid $32,000 to Northeast Bank on a claim for business interruption.

In December 2012, Northeast Bank received more than $61,000 from Xcel Energy as a refund of amounts paid in September 2011.

## II.   DISCUSSION

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  To support an assertion that a fact cannot be or is genuinely disputed, a party must cite "to particular parts of materials in the record," show "that the materials cited do not establish the absence or presence of a genuine dispute," or show "that an adverse party cannot produce admissible evidence to support the fact."  Fed. R. Civ. P. 56(c)(1)(A)-(B).  "The court need consider only the cited materials, but it may consider other materials in the record."  Fed. R. Civ. P. 56(c)(3).  In determining whether summary judgment is appropriate, a court must view genuinely disputed facts in the light most favorable to the nonmovant, *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009), and draw all justifiable inferences from the evidence in the nonmovant's favor, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

**A.     Wells Fargo Bank's motion**

Wells Fargo Bank asserted that summary judgment is appropriate because Northeast Bank's "claims have already been satisfied in full and because Northeast [Bank] cannot be allowed to obtain a second recovery on the same claims."  Wells Fargo Bank relied on the rule that the release of one tortfeasor releases all other tortfeasors if the injured party has been

4

compensated in full.  *See MSK EyEs LTD v. Wells Fargo Bank, Nat'l Ass'n*, 546 F.3d 533, 540-41 (8th Cir. 2008); *Dykes v. Sukup Mfg. Co.*, 781 N.W.2d 578, 582 (Minn. 2010).  According to Wells Fargo Bank, the rule comports with the measure of liability set forth in the Uniform Commercial Code:  "[T]he measure of liability is presumed to be the amount payable on the instrument, but recovery may not exceed the amount of the plaintiff's interest in the instrument." Minn. Stat. § 336.3-420(b).  Northeast Bank has been fully compensated, Wells Fargo Bank argued, because "the insurance checks themselves were simply substitute collateral for the mortgaged property" and Northeast Bank recovered more than the amount owed on its loan to Grand Rios.  Wells Fargo Bank reasoned that Grand Rios owed $4,993,226.24 to Northeast Bank as of July 31, 2011, and that Northeast Bank "received almost $900,000 of value <u>more</u> than it was entitled to recover" through its bid at the foreclosure sale of $4,606,157.21, acquisition of $707,185.25 in the escrow account in October 2011, receipt of $459,648 from Hanover on the claim for roof damage in September 2012, receipt of $32,000 from Hanover in September 2012 on the claim for business interruption, and receipt of the energy refund in the amount of $61,580.06 in December 2012.

Northeast Bank opposed Wells Fargo Bank's motion.  According to Northeast Bank, its right to the converted insurance proceeds vested such that its subsequent bid at the foreclosure sale and receipt of insurance proceeds did not affect its right to the proceeds of the checks.  Even if its bid at the foreclosure sale could affect its right to the insurance proceeds, Northeast Bank argued that the amount owed by Grand Rios exceeded the amount bid at the foreclosure sale by Northeast Bank by more than $387,000.  According to Northeast Bank, its subsequent receipt of insurance proceeds did not satisfy the outstanding loan balance.

5

"If an instrument is payable to two or more persons not alternatively, it is payable to all of them and may be negotiated, discharged, or enforced only by all of them." Minn. Stat. § 336.3-110(d) (2012). "An instrument is . . . converted if it is taken by transfer, other than a negotiation, from a person not entitled to enforce the instrument or a bank makes or obtains payment with respect to the instrument for a person not entitled to enforce the instrument or receive payment." *Id.* § 336.3-420(a). As noted above, "the measure of liability is presumed to be the amount payable on the instrument, but recovery may not exceed the amount of the plaintiff's interest in the instrument." *Id.* § 336.3-420(b).

In this case, it is undisputed that Hanover issued checks made payable to Grand Rios, Northeast Bank, and Alex N. Sill, not alternatively; that Grand Rios tendered the checks to Wells Fargo Bank without Northeast Bank's endorsement, knowledge, or consent; and that Wells Fargo Bank paid $350,000 to Grand Rios. Thus, Wells Fargo Bank converted the checks.

To support the proposition that it is nevertheless not liable to Northeast Bank, Wells Fargo Bank relied heavily on cases that concluded a mortgagee's right to recover insurance benefits is reduced to the extent the mortgagee discharges the debt through foreclosure. *See, e.g.*, *Margaretten & Co. v. Ill. Farmers Ins. Co.*, 526 N.W.2d 389, 390-91 (Minn. Ct. App. 1995); *State Bank of Park Rapids v. Waseca Mut. Ins. Co.*, No. C8-89-1473, 1990 WL 32398 (Minn. Ct. App. Mar. 27, 1990).[3] But the present claim is not one asserted by a mortgagee against an insurer to recover insurance benefits. Instead, it is a claim by one payee against a bank that converted checks by paying another payee without proper endorsements. Both *Margaretten* and *State Bank of Park Rapids* distinguished cases on similar grounds. *See Margaretten*, 526 N.W.2d

---

[3]   "[U]npublished opinions of the court of appeals are not precedential." *Vlahos v. R&I Constr. of Bloomington, Inc.*, 676 N.W.2d 672, 676 n.3 (Minn. 2004); *see Skyline Vill. Park Ass'n v. Skyline Vill. L.P.*, 786 N.W.2d 304, 309 (Minn. Ct. App. 2010) ("Unpublished opinions are of persuasive value '[a]t best' and not precedential." (alteration in original)).

at 390 ("In contrast to this dispute between insurer and mortgagee, *Winberg* involved a dispute between the insured mortgagor and the mortgagee. The insurer settled, and the dispute was between the two named payees on the settlement check." (citation omitted)); *State Bank of Park Rapids*, 1990 WL 32398, at *4 ("Also, the insurer in *Carlson* did not contest the claim. Instead, it voluntarily paid the mortgagee for damage to the premises and a contest for the proceeds developed between the defaulting mortgagor and the mortgagee.").

In the case that *Margaretten* distinguished, *Winberg v. Maryland Casualty Co.*, 434 N.W.2d 274 (Minn. Ct. App. 1989), an insurer denied the mortgagors' claim for property damage. 434 N.W.2d at 275. The mortgagors brought an action against the insurer, the mortgagors defaulted on their mortgage, and the mortgagee commenced foreclosure by advertisement. *Id.* The mortgagee was the high bidder at the foreclosure sale. *Id.* It bid the full amount due and costs. *Id.* No redemption was made. *Id.* After the redemption period's expiration, the mortgagors settled with the insurer, which issued a check made payable to the mortgagors and the mortgagee. *Id.* The mortgagee brought an action for the insurance proceeds. *Id.* The damage to the property was not repaired. *Id.* The district court awarded the funds to the mortgagors "based on the theory that any interest the bank had was destroyed with the foreclosure." *Id.* at 276. The court of appeals reversed. *Id.* at 276-77. The court of appeals stated that the mortgagee was entitled to the insurance proceeds when the loss occurred and that the insurer's delayed payment did not affect the mortgagee's rights to the proceeds. *Id.* *Winberg* cited *Carlson v. Presbyterian Board of Relief for Disabled Ministers*, 70 N.W. 3 (Minn. 1897), the case that *State Bank of Park Rapids* distinguished, to support the proposition that the mortgagee was entitled to the proceeds even after the foreclosure.

In *Carlson*, a mortgagor obtained an insurance policy on a house. 70 N.W. at 3. The policy was issued in his name, and it was payable to the mortgagee as its interest might appear. *Id.* Later, the mortgagee foreclosed and bought the property at the foreclosure sale for the full amount of the mortgage debt and costs. *Id.* During the redemption period, a fire took place at the property, the mortgagor repaired the property at his own expense, and the mortgagee received insurance proceeds from the insurer.[4] *Id.* at 3-4. No redemption was made from the foreclosure sale. *Id.* at 4. After the mortgagor had assigned any and all right he had to the insurance proceeds, the assignee brought an action against the mortgagee to recover the amount paid. *Id.* The supreme court concluded that the insurance money was "rightly paid" to the mortgagee:

> [W]e have simply the question whether the defendant, as mortgagee, after the foreclosure of its mortgage, and the sale of the premises in payment of its debt and costs, was entitled to the insurance money paid to it by the insurance company on account of injury by fire to the house on the mortgaged premises after the sale, and before the expiration of the time for redemption. It must be conceded, as claimed by the plaintiff, that if a third party had purchased the lot at the foreclosure sale for a sum equal to the defendant's debt and costs, and there had been no assignment of the interest of the defendant in the policy to the purchaser, the money paid on the policy to the defendant would belong to the mortgagor, because the defendant in such case would have no interest in the property destroyed. If the mortgagee is the purchaser at the foreclosure sale, his debt, as between him and the mortgagor, is paid; but it is not true that either his mortgage, as a muniment of title, or his interest in the mortgaged premises, is discharged or extinguished. Where the mortgagee is the purchaser at the foreclosure sale, he simply receives a conditional conveyance of the premises for the payment of his debt, and continues to have a lien on the premises for the amount of the purchase price, which was applied in payment of his debt. His interest in the premises is practically the same after the sale as before, except the purchase price must be repaid to him by the mortgagor, with interest, within the

---

[4] Wells Fargo Bank incorrectly stated that "the mortgagee used the insurance proceeds to repair the property." Wells Fargo's Reply Mem. Supp. Summ. Judg. 8, ECF No. 96. The repairs were performed by the mortgagor at the mortgagor's own expense: "[T]he *mortgagor* repaired the whole damage to the house by fire *at his own expense*, with the knowledge and consent, and at the request, of the defendant [mortgagee]." *Carlson*, 70 N.W. at 3 (emphasis added). Thus, the mortgagee bought the property at the foreclosure sale for the full amount owed and costs, the damage to the property that took place after the foreclosure sale was repaired by the mortgagor at the mortgagor's own expense, and the mortgagee received the insurance proceeds.

> year, or his title under his mortgage becomes absolute. Until the time to redeem expires, he has a lien on the premises, and holds them for the security of his bid.
>
> The plaintiff, relying upon some general statements in former decisions of this court to the effect that, where the mortgagee is the purchaser at the foreclosure sale, he stands in the precise condition of a third party purchasing at such sale, and that his debt and mortgage are extinguished to the extent of his bid, claims that the defendant in this case, when it bid in the premises for the full amount of its debt, ceased to be a mortgagee, and had no longer any rights as such in the insurance policy. The statements referred to are correct, in the connection in which they were used; but they afford no support for the proposition of the plaintiff that, by the purchase of the premises at the foreclosure sale, the defendant ceased to have any further interest in the insurance policy, because the defendant technically had ceased to be a mortgagee. The defendant after the foreclosure had the same interest in the dwelling house insured as before, and it still held the insurance policy, which insured, not its debt, but its interest in the house mortgaged. It is wholly immaterial whether the defendant, after the foreclosure, was technically a purchaser, and not a mortgagee, and that its lien and claim on and to the house secured its bid, and not its debt; for it continued to have an insurable interest in the house, by virtue of its mortgage, precisely as it had before the foreclosure. It was this interest that was insured by the policy payable in case of loss to the defendant as its interest might appear, and, a loss having occurred while the policy was in force and the interest still in existence, the insurance money was rightly paid to the defendant, subject to the equity of the mortgagor to have the amount thereof applied pro tanto in redemption of the premises.

*Id.* at 4 (citations omitted).

In this case, Hanover issued checks made payable to Northeast Bank, Grand Rios, and Alex N. Sill, not alternatively. Wells Fargo Bank does not dispute that Northeast Bank was entitled to the insurance proceeds. Having paid $350,000 to Grand Rios without Northeast Bank's endorsement on the checks, Wells Fargo Bank converted the checks. Northeast Bank's subsequent purchase of the property at the foreclosure sale did not affect its right to the converted checks. Having rejected its premise, the Court denies Wells Fargo Bank's motion.

**B.     Northeast Bank's motion**

Northeast Bank asserted that summary judgment is appropriate because it had a right to the proceeds of the converted checks, Wells Fargo Bank deprived Northeast Bank of that right by

9

paying the checks without Northeast Bank's endorsement or consent, and Wells Fargo Bank cannot demonstrate that the proceeds of the converted checks reached Northeast Bank. Wells Fargo Bank responded that Northeast Bank's motion should be denied because Northeast Bank has already been paid in full. For the reasons set forth above, the Court rejects Wells Fargo Bank's argument.

Wells Fargo Bank also argued that Northeast Bank's motion should be denied because there are genuine issues of material fact as to whether the converted funds were used to benefit the property. Wells Fargo Bank pointed Grand Rios's payment of $28,114 to Alex N. Sill, the public adjuster; Grand Rios's payment of $95,000 CenterPoint Energy, which provided natural gas to the property; Grand Rios's payment of $114,094.11 to Xcel Energy, which provided electricity to the property. Evidence of Grand Rios's payments of its bills while it owned the property do not raise a genuine issue of material fact as to the amount of Northeast Bank's damages. *Cf. Am. State Bank v. Union Planters Bank, N.A.*, 332 F.3d 533, 537 (8th Cir. 2003) ("ASB was made a co-payee on the converted checks to protect its liens securing the line-of-credit loan. In this circumstance, we doubt the Supreme Court of Arkansas would consider payments by the co-payee satisfying the debt secured by those liens to be so 'wholly independent' of the conversion as to warrant a double recovery by ASB."). *See generally* 6B Lary Lawrence, *Anderson on the Uniform Commercial Code* § 3-420:16 (3d ed. 2003) ("When the proceeds are used to discharge one of the payee's debts, it would appear that the payee has received the proceeds. However, if this debt is not one that the payee intended to pay, the payee should not be found to have received the proceeds.").[5]

---

[5] Wells Fargo Bank cited *Mouradian v. Astoria Fed. Sav. & Loan*, 653 N.Y.S.2d 654, 656 (N.Y. App. Div. 1997) (dissenting opinion), for the proposition that "wife had no conversion action against bank under §3-420 where husband fraudulently endorsed wife's signature on

Finally, Wells Fargo Bank maintained that summary judgment in Northeast Bank's favor would frustrate the purposes of the settlement agreement. But the settlement agreement itself states that "nothing herein shall release any claims against any third parties, including any claims related to insurance, deposited items and proceeds of insurance or collateral." Thus, the Court rejects Wells Fargo Bank's argument.

In short, the record reveals that Wells Fargo Bank converted the checks. The measure of liability is presumed to be $350,000. Wells Fargo Bank did not proffer any evidence that raises a genuine issue of material fact as to Northeast Bank's damages. The Court grants Northeast Bank's motion. Wells Fargo Bank is liable to Northeast Bank for $350,000, as well as prejudgment interest, *see* Minn. Stat. § 549.09 (2012); *Bloomquist v. First Nat'l Bank of Elk River*, 378 N.W.2d 81, 86 (Minn. Ct. App. 1985). The Court will enter judgment at an appropriate time. *See* Fed. R. Civ. P. 54(b).

### III. CONCLUSION

Based on the files, records, and proceedings herein, and for the reasons stated above, IT IS ORDERED THAT:

1. Northeast Bank's Motion for Summary Judgment [Docket No. 77] is GRANTED.

2. Wells Fargo Bank's Motion for Summary Judgment [Docket No. 84] is DENIED.

Dated: January 16, 2014

s/Joan N. Ericksen
JOAN N. ERICKSEN
United States District Judge

---

converted check, but invested the proceeds of the check in repairs to a house jointly owned by husband and wife." This case involves neither married payees nor improvements to a jointly-owned house.